## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT SARGENT,                    :        CIVIL NO. 1:17-CV-511
                                 :
      Plaintiff            :        (Chief Judge Conner)
                                 :
v.                               :
                                 :
JAMES LARSON, *et al.*,          :
                                 :
      Defendants           :

## MEMORANDUM

Plaintiff Scott Sargent ("Sargent"), an inmate who, at all relevant times, was housed at the Luzerne County Correctional Facility, in Wilkes-Barre, Pennsylvania ("LCCF"), initiated the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 44). Named as defendants are James Larson, Mark Rockovich, Linda McClosky Houck, Tim McGinley, Edward Brominski, Kathy Dobash, Eugene Kelleher, Harry Haas, Robert Schnee, Eileen Sorokas, Stephen Urban, Jane Walsh Watkins, Rick Williams, Dave Pedri, John Burke, Carol Loftus, Diane Everett, Denise Mikalstein, Aaron Gallagher, Tom Shasitsky, and Chris Gale (collectively, "Luzerne County defendants"), and David Benoit and Elizabeth Joyce. (Id.)

Before the court is a motion (Doc. 45) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to

Federal Rule of Civil Procedure 56 by defendants Benoit and Joyce[1], and a motion

(Doc. 47) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by the

Luzerne County defendants.  Sargent failed to respond to the motions and the time

for responding has now passed.[2]  In the absence of any timely response by Sargent,

the motions are deemed unopposed and ripe for resolution.  For the reasons set

forth below, the court will grant each pending motion.  The court will also dismiss

the action against Diane Popacheck and Ranaldo Diaz pursuant to Rule 4(m) of the

Federal Rules of Civil Procedure.

## I.    Allegations of the Amended Complaint

On November 2, 2015, Sargent was discharged from Geisinger Wyoming

Valley Medical Center, after undergoing multiple surgeries secondary to a gunshot

wound, and placed in the infirmary at the Luzerne County Correctional Facility.

(Doc. 44 ¶¶ 8-9).  At discharge, the hospital allegedly provided instructions to the

---

[1] Defendants Benoit and Joyce contend that Sargent failed to properly exhaust the available administrative remedies prior to filing this action.  Because these defendants rely on documents outside the pleadings to support this argument, the court will address the exhaustion argument under the summary judgment standard.  By order dated January 11, 2019, the court placed the parties on notice that it may consider exhaustion in its role as fact finder under Small v. Camden County, 728 F.3d 265 (3d Cir. 2013).  (Doc. 56) (citing Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018)).  The order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies.  (Id.)

[2] Sargent was cautioned that failure to file briefs in opposition to defendants' motions would result in the motions being deemed unopposed.  (See Docs. 59, 61 ¶ 2; see also L.R. 7.6 ("Any party opposing any motion . . . shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion")).

LCCF regarding Sargent's wound care and medication regimen. (Id. at ¶¶ 10-11, 13-15).

Sargent alleges that defendant Dr. Diaz refused to prescribe him the Oxycodone that his surgeons had recommended, and instead prescribed Tylenol 3 for pain. (Id. at ¶¶ 16, 19, 22-23). Sargent contends that the Tylenol 3 was not effective in eliminating his pain. (Id.) In the following weeks, Sargent alleges that he had difficulty eating, lost weight, and continued to experience pain. (Id. at ¶¶ 19-20).

On November 5, 2015, Sargent was admitted to the hospital due to abdominal pain and issues with his upper quadrant drain. (Id. at ¶ 17). Sargent was treated and discharged two days later. (Id.)

On November 12, 2015, Sargent was again hospitalized due to an abnormal hemoglobin count. (Id. at ¶ 20). Sargent was treated and discharged the same day. (Id.) Upon his return to the LCCF, Sargent was housed in the infirmary. (Id. at ¶¶ 23-28). Sargent alleges that he continued to suffer from pain, he was unable to eat, and experienced vomiting. (Id.) He contends that defendants declined to take him to the hospital. (Id.)

On November 27, 2015, after finding that his vitals were high, defendant Joyce recommended that Sargent be admitted to the hospital. (Id. at ¶ 27). Sargent was admitted to the hospital that same day. (Id.) At the hospital, it was determined that Sargent had a small bowel obstruction. (Id. at ¶¶ 30-35). He remained at

Geisinger Wyoming Valley until December 1, 2015. (Id.) Sargent was then transported back to the LCCF. (Id.)

Sargent alleges that symptoms of a bowel obstruction returned on December 7, 2015, and he was transported to the hospital on December 10, 2015. (Id. at ¶ 37). Sargent was treated and discharged the same day. (Id.)

Sargent alleges that defendants Loftus, Everett, Mikalstein, Gallagher, Shasitsky, and Gale did not change his bandages as frequently as had been recommended by Geisinger staff, which he contends caused a MRSA/staph infection. (Id. at ¶ 47). However, a subsequent test for MRSA/staph was negative. (Id.)

Sargent alleges that he was not provided with the necessary colostomy supplies, and that "some Defendant in the medical department" stopped the Aspirin dosage he previously took. (Id. at ¶¶ 48-49, 53).

Sargent avers that he filed complaints and grievances regarding his medical care and colostomy supplies. (Id. at ¶¶ 48-55).

## II. <u>Motion for Summary Judgment by Defendants Benoit and Joyce</u>

### A. **Legal Standard**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.

4

Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

### B.      Discussion

Defendants Benoit and Joyce argue that Sargent failed to exhaust the grievance procedure available at the Luzerne County Correctional Facility prior to filing the instant action. (Doc. 46 at 4-10). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement applies to grievance procedures "regardless of the relief offered through administrative procedures");

Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Id. at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. See Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements. Id. at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Failure to identify a named defendant on a grievance form, absent a "justifiable excuse," constitutes failure to properly exhaust as to that defendant. Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential).

The Luzerne County Correctional Facility has an Inmate Grievance Policy that was in effect at all times relevant to the instant action. (Doc. 45-2). Under the policy, an inmate must first attempt to resolve complaints with staff on an informal basis. (Id.) Following the unsuccessful informal resolution of a problem, an inmate may file a grievance, in writing, on a form provided by the facility. (Id.) The grievance officer will review the grievance and issue a decision. (Id.) Inmates who are dissatisfied with the response of the grievance officer have the right to appeal

that decision to the warden.  (Id.)  The appeal must be submitted in writing to the

warden.  (Id.)  The warden's decision is final.  (Id.)

During Sargent's incarceration at the Luzerne County Correctional Facility,

he submitted several grievances concerning his medical care to initial review.  The

undisputed record reflects that he never appealed any of these grievances to final

review.

On December 15, 2015, Sargent filed the following grievance:

> I am in constant pain and only receive Tylenol #3 and [have been]
> repeatedly denied the pain meds prescribed by my surgery team at
> Geisinger.  #2 I came to this facility @ 165 pounds.  I have a bowel
> obstruction [which] causes me to [profusely] vomit food & liquid for
> days at a time.  I am severely malnourished.  I am down to 119 pounds.
> Again was advised by my surgery team when the throwing up starts
> return to the E.R.  C.C.S. and Dr. Diaz refuse[] to send me and leave
> me crutched in my cell for days in severe pain.  Also my wounds are to
> be cleaned and changed every 12 hrs.  I go 2 or 3 days with the same
> bandages until I ask repeatedly for the change.  This is not the right
> environment to deal with my care.  I need to be moved where I can
> receive adequate care.  I am recovering from major surgery and need
> urgent care.

(Doc. 45-1 at 5).

On December 21, 2015, the prison responded as follows: "Seen by doctor on

12-21-15.  Meds deemed necessary have been given."  (Id.)  Sargent contends that

he appealed this grievance to the warden on December 23, 2015, and again on

December 28, 2015, but received no response.  Sargent has failed to submit any

copies of these purported appeals, and the LCCF does not have a record of these

appeals in their file.  (See Doc. 45-1).

On June 5, 2016, Sargent filed a grievance complaining about his colostomy supplies. (Doc. 45-1 at 3). In the grievance, Sargent stated that the supplies he was using were "left overs", did not fit him properly, and were causing skin irritation. (Id.) On June 15, 2015, a nurse responded and advised Sargent that "[s]upplies were ordered several times." (Id.) Sargent again avers that he appealed to the warden, but never received a response. (Doc. 44 ¶ 51). Sargent failed to submit any evidence of an appeal to the warden, and the LCCF does not have any such appeal in its file. (See Doc. 45-1).

Sargent further contends that he filed five medical grievances between September 17, 2016 and October 16, 2016, to which he received no response. (Doc. 44 ¶ 52). Sargent has not submitted any evidence of any such grievances, and the LCCF does not have these grievances in its file. (See Doc. 45-1).

On October 17, 2016, Sargent filed the following grievance:

> I have filed multiple complaints and grievances on the medical department all to which no response. I filed 5 medical grievances in the last 30 days all with absolutely no response or resolution. I have some complications I'm dealing with from a recent surgery and medical refuses to do anything or even let me see a doctor. Also someone in medical stopped my medication. I take an aspirin 325 every day because I have no spleen and my platelets are extremely high and am at high risk for blood clots for 10 months. I've taken aspirin then the nurse says they stopped it. How can someone make the determination without seeing the doctor or no blood work to show my platelet level? This is a serious issue that needs to be addressed promptly.

(Doc. 45-1 at 2). On October 19, 2016, Captain Kevin Gallagher responded as follows:

I reviewed your complaint to the medical department. They noted that you have been treated for all your complaints and surgical conditions. They also had to look for your medical records from Geisinger. There were three requests for medical sick calls in your file which you were treated for, and no grievances.

(Id.)

Sargent claims that he filed an appeal to the warden on October 21, 2016, but never received a response. Sargent has not submitted a copy of this purported appeal, and the LCCF does not have this appeal in its file. (See Doc. 45-1).

To be clear, the record is devoid of <u>any</u> evidence that Sargent appealed <u>any</u> of his grievances to final review. Accordingly, the Court concludes that Sargent failed to exhaust the administrative grievance procedure available at the Luzerne County Correctional Facility prior to filing in the instant action.

In certain circumstances, a prisoner may be excused from the exhaustion requirement. The Third Circuit recognizes a "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust will only be excused "under certain limited circumstances," <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis</u>, 49 F. App'x at 368. The Third Circuit has held that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests

9

for a decision on his claim." <u>Robinson v. Superintendent Rockview SCI</u>, 831 F.3d 148, 154 (3d Cir. 2016). In the present matter, Sargent does not allege, nor does he present any affirmative evidence, that he was he misled or ignored by prison officials, was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the grievance process. Notably, despite being directed to file a brief in opposition to defendants' motion, Sargent has failed to oppose defendants' motion and failed to submit any evidence in support of his claims. The court thus finds that there is no genuine dispute of fact that Sargent failed to exhaust his administrative remedies prior to filing the instant action.

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>See</u> <u>Anderson</u>, 477 U.S. at 250-57; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e). Sargent has failed to meet his burden with respect to the administrative exhaustion of his present claims. Therefore, defendants Benoit and Joyce are entitled to an entry of judgment in their favor.

### III.   Luzerne County Defendants' Motion to Dismiss

#### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal

elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

**B.     Discussion**

**1.     *Deliberate Indifference to Serious Medical Needs***

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-05 (1976).  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (citing <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir.

1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

The Court assumes that Sargent's post-surgical treatment and bowel obstruction rise to the level of serious medical conditions for purposes of the Eighth Amendment analysis. Therefore, the court must determine whether Sargent has pled deliberate indifference to his medical needs. He has not. To the contrary, the allegations in the amended complaint demonstrate that defendants were not deliberately indifferent to Sargent's serious medical needs. The amended complaint provides that Sargent was housed in the infirmary at the LCCF, and the medical department treated Sargent on numerous occasions. Sargent was

transported to an outside hospital three times within his first month at the LCCF, again the following month, and again months later to undergo a colostomy reversal surgery. Medical staff were attentive to Sargent's needs and routinely transferred him to an outside hospital for any necessary treatment. Additionally, Sargent was regularly provided with medication for his pain.

By Sargent's own account, he received medical treatment and medication at the Luzerne County Correctional Facility. To the extent that Sargent is dissatisfied with the type of medication that was prescribed, this allegation, at best, demonstrates Sargent's disagreement with medical treatment. Though he may have preferred a different medication, such disagreement is not enough to state a § 1983 claim. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); Gause v. Diguglielmo, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation). This is particularly true in light of the fact that there are no allegations in the amended complaint that defendants intentionally withheld medical treatment from Sargent in order to inflict pain or harm upon him. See Farmer, 685 F. Supp. at 1339; Rouse, 182 F.3d at 197. Furthermore, Sargent does not allege that the prescribed medication resulted in any risk of harm to his health. Rather, Sargent simply alleges that Tylenol 3 was not as effective as Oxycodone in managing his pain.

The allegations in Sargent's amended complaint amount to nothing more than his subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. See Carpenter v. Kloptoski, No. 08-CV-2233, 2012 WL 983565, at *6 (M.D. Pa. Mar. 22, 2012) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"). Claims of medical malpractice and disagreements as to the proper course of medical treatment simply do not suffice to satisfy the deliberate indifference standard. See Monmouth Cty., 834 F.2d at 346. Courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Based on the foregoing, Sargent's amended complaint fails to articulate a plausible civil rights claim. The Luzerne County defendants' motion will be granted in this regard.

### 2. *Lack of Personal Involvement*

Defendants Larson and Rockovich argue that Sargent fails to state a claim against them because they lack personal involvement in the alleged wrongs, and the allegations against them are based solely on the doctrine of *respondeat superior*. (Doc. 49 at 14-15). The court agrees.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347,

353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

With respect to defendant Larson, the acting deputy warden at the LCCF, and defendant Rockovich, the division head of correctional services at the LCCF, it appears that Sargent attempts to hold the defendants liable based on their supervisory roles. However, it is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See Rode, 845 F.2d at 1207. Accordingly, the court will grant defendants' motion to the extent that Sargent's deliberate indifference claim relies on a *respondeat superior* theory of liability.

Additionally, for purposes of Eighth Amendment medical claims, nonmedical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being

treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

The rationale for this rule has been explained by the United States Court of Appeals

for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical
> prison official will generally be justified in believing that the prisoner
> is in capable hands.  This follows naturally from the division of labor
> within a prison.  Inmate health and safety is promoted by dividing
> responsibility for various aspects of inmate life among guards,
> administrators, physicians, and so on.  Holding a non-medical prison
> official liable in a case where a prisoner was under a physician's care
> would strain this division of labor.  Moreover, under such a regime,
> nonmedical officials could even have a perverse incentive not to
> delegate treatment responsibility to the very physicians most likely to
> be able to help prisoners, for fear of vicarious liability.  Accordingly, we
> conclude that, absent a reason to believe (or actual knowledge) that
> prison doctors or their assistants are mistreating (or not treating) a
> prisoner, a non-medical prison official . . . will not be chargeable with
> the Eighth Amendment scienter requirement of deliberate
> indifference.

Spruill, 372 F.3d at 236.  Courts have repeatedly held that, absent some reason to

believe that prison medical staff are mistreating prisoners, non-medical corrections

staff who refer inmate medical complaints to physicians may not be held personally

liable for medically-based Eighth Amendment claims.  See, e.g., id. at 236-37 (citing

Durmer, 991 F.2d at 69); Garvey v. Martinez, No. 08- 2217, 2010 WL 569852, at *6-7

(M.D. Pa. 2010); Hodge v. United States, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D.

Pa. 2007).  Moreover, a claim of a constitutional deprivation cannot be premised

merely on the fact that the named defendant was the prison warden, or a prison

supervisor, when the incidents set forth in the complaint occurred.  See Rode, 845

F.2d at 1207.

With respect to the nonmedical defendants, Larson and Rockovich, Sargent fails to establish a viable claim. Defendant Larson is the acting deputy warden atthe LCCF, and defendant Rockovich is the division head of correctional services at the LCCF. They are not trained members of the medical staff subject to liability for an Eighth Amendment claim. Moreover, as stated, a review of the amended complaint confirms that there are no specific assertions that these defendants had any personal involvement in the purported violations of Sargent's rights under the Eighth Amendment. (See generally Doc. 44). Sargent has failed to establish that these defendants provided him with medical care, refused to provide medical care, or prevented him from receiving medical care; nor has Sargent established that these defendants were aware of or acquiesced in purported Eighth Amendment violations. Because Sargent was under the regular care of medical experts, the nonmedical defendants were justified in believing that he was in capable hands. See Spruill, 372 F.3d at 236; Durmer, 991 F.2d at 69.

To the extent that Sargent attempts to hold any of the defendants liable based on their involvement in the grievance procedure, this claim also fails. Inmates do not have a constitutional right to prison grievance procedures. Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Rode, 845 F.2d 1195, 1207 (3d Cir. 1998) (supervisory liability

where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). Thus, any attempt to establish liability against defendants based upon their involvement in of the grievance process does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability).

For all the foregoing reasons, the court will grant defendants' unopposed motion.

### 3. *Qualified Immunity*

Defendants invoke the defense of qualified immunity in their motion to dismiss. (Doc. 49 at 13-14). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231

(2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp, 669 F.3d at 159 (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first). Because the court finds that Sargent has failed to establish the violation of a constitutional right, defendants are protected from liability by qualified immunity.

### 4.    *State Law Claim*

Sargent's state law claim of negligence against defendants will also be dismissed. A district court may decline to exercise supplemental jurisdiction over a

state law claim or claims if the district court dismisses those claims over which it has original jurisdiction. Since the claims that form the basis of this court's jurisdiction under 28 U.S.C. § 1331 will be dismissed, the court declines to exercise supplemental jurisdiction.

### C. Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth herein, the court concludes that allowing Sargent another opportunity to amend would be futile.

### IV. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Defendants Diane Popacheck and Ranaldo Diaz were named in the amended complaint that was filed on April 2, 2018 and, to date, have not been served in this case. The court must engage in a two-step process in determining whether to dismiss the non-served defendants or grant Sargent additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." <u>Petrucelli v. Bohringer & Ratzinger</u>, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. <u>MCI Telecomm. Corp. v. Teleconcepts, Inc.</u>, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." <u>Id.</u> Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. <u>Id.</u>

In the present matter, Sargent failed to establish good cause. Sargent's *pro se* status is not good cause to excuse his failure to timely serve and identify this defendant. <u>Veal v. United States</u>, 84 F. App'x 253, 256 (3d Cir. 2004). Additionally, Sargent failed to timely request an enlargement of time to serve this defendant. <u>See</u> <u>McCurdy v. Am. Bd. of Plastic Surgery</u>, 157 F.3d 191, 196 (3d Cir. 1998) (noting that good cause is generally established when a plaintiff moves for an extension of

time before the expiration of the 120 days service period).  Thus, the court finds that Sargent failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendants within ninety days, a district court may either dismiss the defendants, or exercise its discretion to order that service be made within a specific time.  <u>Petrucelli</u>, 46 F.3d at 1305; <u>see</u> <u>also</u> FED. R. CIV. P. 4(m).  After the expiration of the ninety-day time period set forth in Rule 4(m), the court notified Sargent that the action against defendants Popacheck and Diaz was subject to dismissal and directed him to show cause why the action against these defendants should not be dismissed pursuant to Rule 4(m).  (Docs. 55, 62).  It is Sargent's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (<u>See</u> Doc. 6 ¶ 2) (advising Sargent that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

Sargent has been granted the opportunity to effect proper service and was notified that the non-served defendants were subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m).  (Docs. 55, 62).  Sargent has nevertheless failed to serve these defendants.  As a result, the non-served defendants will be dismissed from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within ninety days of the date on which they were named as defendants in this action.

## V.    <u>Conclusion</u>

For the reasons set forth above, the court will grant defendants' unopposed motions (Docs. 45, 47).  The court will also dismiss the action against Diane Popacheck and Ranaldo Diaz pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate order will issue.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 22, 2019